United States District Court
Eastern District of Michigan
Southern Division

United States of America,

        Plaintiff,

                                  Hon. Bernard A. Friedman

v.

                                  Case No. 20-cr-20233

D-6 Jean Pinkard, NP,

        Defendant.

_____/

# Plea Agreement

The United States of America and the defendant, Jean Pinkard, NP, have reached a plea agreement under Federal Rule of Criminal Procedure 11. The plea agreement's terms are:

## 1. Count of Conviction

The defendant will plead guilty to Count 1 of the Indictment. Count 1 charges the defendant with conspiracy to possess with intent to distribute and to distribute controlled substances under 21 U.S.C. §§ 841(a)(1) and 846.

**2.    Statutory Minimum and Maximum Penalties**

The defendant understands that the count to which she is

pleading guilty carry the following minimum and maximum statutory

penalties:

| Count 1 | Term of Imprisonment: | Maximum of 20 years |
|---------|----------------------|---------------------|
|         | Fine: | Maximum of $1,000,000 |
|         | Term of Supervised Release: | At least 3 years |

**3.    Agreement to Dismiss Remaining Charges**

If the Court accepts this agreement and imposes sentence

consistent with its terms, the United States Attorney's Office for the

Eastern District of Michigan will move to dismiss any remaining

charges in the indictment against the defendant in this case.

**4.    Elements of Count[s] of Conviction**

The elements of Count 1 are as follows:

First:    That two or more persons conspired, or agreed, to
          commit the crime of unlawful distribution of controlled
          substances;

Second:   That the defendant knowingly and voluntarily joined
          the conspiracy; and

Third:    The controlled substances involved in the conspiracy
          included but were not limited to the schedule II

controlled substances Oxycodone, Oxymorphone,
Oxycodone-Acetaminophen (Percocet), Hydrocodone,
Hydrocodone-Acetaminophen.

What the government must prove is that there was a mutual
understanding, either spoken or unspoken, between two or more people,
to cooperate with each other to commit the crime of unlawful
distribution of controlled substances, including but not limited to the
Schedule II drugs Oxycodone, Oxymorphone, Oxycodone-
Acetaminophen (Percocet), Hydrocodone, and Hydrocodone-
Acetaminophen (Norco).

If there was a criminal agreement, then the government must
prove that the defendant knowingly and voluntarily joined the
agreement.  To convict the defendant, the government must prove that
she knew the conspiracy's main purpose, and that she voluntarily joined
it intending to help advance or achieve its goals.

The term "knowingly," as used to describe the alleged state of
mind of a defendant, means that she was conscious and aware of her
actions, realized what she was doing or what was happening around
her, and did not fail to act because of ignorance, mistake or accident.

Additionally, a nurse practitioner may not be convicted when she dispenses controlled substances in good faith to patients in the regular course of professional practice. Only the lawful acts of a medical professional, however, are exempted from prosecution under the law. In order to sustain its burden of proof, the government must prove beyond a reasonable doubt that the defendant knowingly and deliberately distributed a controlled substance and did so other than in good faith in the usual course of a professional practice and in accordance with a standard of medical practice generally recognized and accepted in the United States. The defendant may not be convicted if she merely made an honest effort to treat her patients in compliance with an accepted standard of medical practice.

A controlled substance is distributed by a nurse practitioner in the usual course of her professional practice and, therefore, lawfully, if the substance is distributed by her in good faith in medically treating a patient. Good faith in this context means good intentions and the honest exercise of good professional judgment as to a patient's medical needs. Good faith connotes an observance of conduct in accordance with what the nurse practitioner should reasonably believe to be proper

medical practice.  Defendant need not prove that she was acting in good faith; rather, the government bears the burden of proving that a defendant was not acting in good faith.

5.    **Factual Basis**

The parties agree that the following facts are true, accurately describe the defendant's role in the offense, and provide a sufficient factual basis for the defendant's guilty plea:

Beginning in or about September 2017, and continuing up to and including June 2020, a scheme and pattern of illegal conduct involving the unlawful acquiring and distribution of prescription drug controlled substances was formed and active within the Eastern District of Michigan and elsewhere.  The defendant, Nurse Practitioner Jean Pinkard, willfully conspired, with two or more persons, to possess with intent to distribute and to distribute controlled substances, including but not limited to the Schedule II drugs Oxycodone, Oxymorphone, Oxycodone-Acetaminophen (Percocet), Hydrocodone, and Hydrocodone-Acetaminophen in violation of 21 U.S.C. §§ 841(a)(1) and 846.

The scheme and pattern of illegal conduct involving the unlawful distribution of Schedule II prescription drug controlled substances was

devised whereby patient recruiters/marketers would provide co-defendant John Rankin with patient names and dates of birth to have highly addictive medications issued in the patients' names.  Co-defendant John Rankin was the owner of New Vision Rehab Center; however, he had no medical training or medical licenses.  Rankin would provide lists of the patient information to defendant Jean Pinkard and other health professionals who worked at New Vision Rehab Center, directing them to issue controlled substance prescriptions in the "patient's" names.  The defendant, without ever seeing the patients, would issue the controlled substances prescriptions simply based on the list of patient identifying information received from co-defendant John Rankin.  When the defendant prescribed controlled substances she did not see or adequately examine the patients and knew that she was not prescribing legitimately or in good faith.  The purpose of issuing the controlled substance prescriptions was not for the legitimate treatment of patients, but rather, to obtain cash payments for issuing the prescription pills that could later be sold on the illegal street market for a substantial profit.

The parties stipulate that defendant was a member of the conspiracy from on or about September 2019 through on or about June 2020. The parties further stipulate the amount of controlled substances distributed during the course of the conspiracy that was reasonably foreseeable to her, for purposes of Sentencing Guideline calculations, was approximately 13,299 unit doses of Schedule II controlled substances. The parties also stipulate that New Vision Rehab Center was located in the Eastern District of Michigan.

The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for defendant's guilty plea to the charges against her. It does not include all of the facts known to her concerning criminal activity in which she and others engaged. The defendant makes this statement knowingly and voluntarily and because she is in fact guilty of the crime charged.

## 6.  Advice of Rights

The defendant has read the Indictment, has discussed the charges and possible defenses with her attorney, and understands the crime(s) charged. The defendant understands that, by pleading guilty, she is waiving many important rights, including the following:

A.     The right to plead not guilty and to persist in that plea;

B.     The right to a speedy and public trial by jury;

C.     The right to the assistance of an attorney at every critical stage of the proceedings, including trial;

D.     The right to an appointed attorney, if the defendant cannot afford to retain one;

E.     The right to be presumed innocent and to require the government to prove the defendant guilty beyond a reasonable doubt at trial;

F.     The right to confront and cross-examine adverse witnesses at trial;

G.     The right to testify or not to testify at trial, whichever the defendant chooses;

H.     If the defendant chooses not to testify, the right to have the jury informed that it may not treat that choice as evidence of guilt;

I.     The right to present evidence or not to present evidence at trial, whichever the defendant chooses; and

J.     The right to compel the attendance of witnesses at trial.

7.   **Collateral Consequences of Conviction**

The defendant understands that her conviction here may carry additional consequences under federal or state law. The defendant understands that, if she is not a United States citizen, her conviction here may require her to be removed from the United States, denied citizenship, and denied admission to the United States in the future. The defendant further understands that the additional consequences of her conviction here may include, but are not limited to, adverse effects on the defendant's immigration status, naturalized citizenship, right to vote, right to carry a firearm, right to serve on a jury, and ability to hold certain licenses or to be employed in certain fields. The defendant understands that no one, including the defendant's attorney or the Court, can predict to a certainty what the additional consequences of the defendant's conviction might be. The defendant nevertheless affirms that the defendant chooses to plead guilty regardless of any immigration or other consequences from her conviction.

8.    **Defendant's Guideline Range**

   A.    **Court's Determination**

   The Court will determine the defendant's guideline range at sentencing.

   B.    **Acceptance of Responsibility**

   The government recommends under Federal Rule of Criminal Procedure 11(c)(1)(B) that the defendant receive a two-level reduction for acceptance of responsibility under USSG § 3E1.1(a). Further, if the defendant's offense level is 16 or greater and the defendant is awarded the two-level reduction under USSG § 3E1.1(a), the government recommends that the defendant receive an additional one-level reduction for acceptance of responsibility under USSG § 3E1.1(b). If, however, the government learns that the defendant has engaged in any conduct inconsistent with acceptance of responsibility—including, but not limited to, making any false statement to, or withholding information from, her probation officer; obstructing justice in any way; denying her guilt on the offense(s) to which she is pleading guilty; committing additional crimes after pleading guilty; or otherwise demonstrating a lack of acceptance of responsibility as defined in USSG

§ 3E1.1—the government will be released from its obligations under this paragraph, will be free to argue that the defendant not receive *any* reduction for acceptance of responsibility under USSG § 3E1.1, and will be free to argue that the defendant receive an enhancement for obstruction of justice under USSG § 3C1.1.

### C.   Other Guideline Recommendations

The parties also recommend under Federal Rule of Criminal Procedure 11(c)(1)(B) that the following guideline provisions apply:

| Guideline | Description | Level |
|---|---|---|
| § 2D1.1(a)(5) | Conspiracy to Possess with Intent to Distribute & Distribute Controlled Substances (drug equivalent is approx. 2,237 kg MJ based on 7,739 d.u. Oxycodone HCL 30mg, 2,320 d.u. Oxymorphone HCL 40mg, 1,410 Oxycodone-Acetaminophen 10-325, 1,830 Hydrocodone-Acetaminophen 10-325 mg) | 30 |
| § 2D1.1(b)(18) | Safety Valve | -2 |
| § 3B1.3 | Special Skill | 2 |

Under § 2D1.1(b)(18), the defendant qualifies for the two level safety valve reduction if the Court finds at sentencing that she has satisfied *all* of the requirements in § 3553(f). Further, under USSG

§ 3B1.3, defendant used a special skill in a manner that significantly facilitated commission of the offense resulting in a two level increase in her base offense level.

### D. Factual Stipulations for Sentencing Purposes

The parties have no additional factual stipulations for sentencing purposes.

### E. Parties' Obligations

Both the defendant and the government agree not to take any position or make any statement that is inconsistent with any of the guideline recommendations or factual stipulations in paragraphs 9.B, 9.C, or 9.D. Other than the guideline recommendations and factual stipulations in those paragraphs, however, neither party is restricted in what it may argue or present to the Court as to the defendant's guideline calculation.

### F. Not a Basis to Withdraw

The defendant understands that she will have no right to withdraw from this agreement or withdraw her guilty plea if she disagrees, in any way, with the guideline range determined by the Court, even if that guideline range does not incorporate the parties'

recommendations or factual stipulations in paragraphs 9.B, 9.C, or 9.D.
The government likewise has no right to withdraw from this agreement
if it disagrees with the guideline range determined by the Court.

## 9.    Imposition of Sentence

### A.    Court's Obligation

The defendant understands that in determining her sentence, the
Court must calculate the applicable guideline range at sentencing and
must consider that range, any possible departures under the sentencing
guidelines, and the sentencing factors listed in 18 U.S.C. § 3553(a), and
apply any applicable mandatory minimums.

### B.    Imprisonment

#### 1.    Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the
government recommends that the defendant's sentence of imprisonment
not exceed the top of the defendant's guideline range as determined by
the Court.

#### 2.    No Right to Withdraw

The government's recommendation in paragraph 10.B.1 is not
binding on the Court. The defendant understands that she will have no

right to withdraw from this agreement or withdraw her guilty plea if the Court decides not to follow the government's recommendation. The government likewise has no right to withdraw from this agreement if the Court decides not to follow the government's recommendation. If however, the Court rejects or purports to reject any other term or terms of this plea agreement, the government will be permitted to withdraw from the agreement.

### C.   Supervised Release

#### 1.   Recommendation

Under Federal Rule of Criminal Procedure 11(c)(1)(B), the parties recommend that the Court impose a 5-year term of supervised release.

#### 2.   No Right to Withdraw

The parties' recommendation is not binding on the Court. The defendant understands that she will have no right to withdraw from this agreement or withdraw her guilty plea if the Court decides not to follow the parties' recommendation.

The defendant also understands that the government's recommendation concerning the length of the defendant's sentence of imprisonment, as described above in paragraph 10.B.1, will not apply to

or limit any term of imprisonment that results from any later

revocation of the defendant's supervised release.

### D.    Fines

There is no recommendation or agreement as to a fine.

### E.    Restitution

The Court must order restitution to every identifiable victim of

the defendant's offense. There is no recommendation or agreement on

restitution. The Court will determine at sentencing who the victims are

and the amounts of restitution they are owed.

The defendant agrees that restitution is due and payable

immediately after the judgment is entered and is subject to immediate

enforcement, in full, by the United States. 18 U.S.C. §§ 3612(c) and

3613. If the Court imposes a schedule of payments, the defendant

agrees that the schedule of payments is a schedule of the minimum

payment due, and that the payment schedule does not prohibit or limit

the methods by which the United States may immediately enforce the

judgment in full.

The defendant agrees to make a full presentence disclosure of her

financial status to the United States Attorney's Office by completing a

Financial Disclosure Form and the accompanying releases for the purpose of determining her ability to pay restitution. The defendant agrees to complete and return the Financial Disclosure Form within three weeks of receiving it from government counsel. The defendant agrees to participate in a presentencing debtor's examination if requested to do so by government counsel.

### F.    Forfeiture

Pursuant to 21 U.S.C. § 853, the defendant agrees to forfeit to the United States her interest in: (1) any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of her violation of Title 21 as alleged in Count 1 of the Indictment; and, (2) any of the person's property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violation.

Specifically, the defendant agrees to forfeit to the United States, her interest in the following:

- Two Thousand Two Hundred Eighty-Six Dollars ($2,286) in U.S. Currency

The defendant agrees to the entry of one or more orders of forfeiture incorporating forfeiture of the assets enumerated in this

section and the above-referenced money judgment, including the Court's prompt entry of a Preliminary Order of Forfeiture, following the defendant's guilty plea, upon application by the United States, at, or any time before, her sentencing in this case, as mandated by Fed. R. Crim. P. 32.2. The defendant agrees to sign such an order, indicating she consents to its entry if requested to do so by the government.

The defendant agrees that she will cooperate with the United States by taking whatever steps are necessary to deliver clear title to property subject to forfeiture under this agreement to the United States and will execute such legal documents as may be required to transfer rights, title, and ownership to the United States and by taking whatever steps are necessary to ensure that the property is not sold, disbursed, hidden, wasted, or otherwise made unavailable for forfeiture.

The defendant acknowledges that she understands that the forfeiture of assets is part of the sentence that may be imposed in this case and waives any failure by the Court to advise her of this, pursuant to Fed. R. Crim. P. 11(b)(1)(J), or otherwise, at the time of her guilty plea is accepted.

In entering into this agreement with respect to forfeiture, the defendant knowingly, voluntarily, and intelligently waives any Double Jeopardy challenge, or any other challenge to the above-described forfeiture based on the Excessive Fines Clause of the Eighth Amendment to the United States Constitution.

The defendant also agrees that she shall assist the United States in all proceedings, whether administrative or judicial, involving the forfeiture, disgorgement, transfer, or surrender of all rights, title, and interest, regardless of their nature of form, in the property that she has agreed to forfeit, disgorge, transfer, or surrender, and any other assets, including real and personal property, cash, and other monetary instruments, wherever located, which defendant or others to her knowledge have accumulated as a result of illegal activities.

Such assistance will include agreement by the defendant's heirs, successors, and assigns, to forfeiture, disgorgement, transfer, or surrender, to any interest in the above-described forfeiture. Such assistance will further involve an agreement by defendant to the entry of an order enjoining the transfer or encumbrance of assets that may be

identified as being subject to forfeiture, disgorgement, transfer, or
surrender.

The defendant also agrees to identify all assets over which she
exercises control, directly or indirectly, or has exercised such control,
within the past five years. She will identify all assets in which she has
or had during that time any financial interest will provide all necessary
and appropriate documentation with respect to said assets, including
consents to forfeiture, quit claim deeds, and any and all other
documents necessary to deliver good and marketable title to said
property. The defendant agrees to take all steps as requested by the
government to obtain from any other parties by any lawful means any
records of assets owner at any time by defendant. She also agrees to
undergo any polygraph examination the government may choose to
administer concerning such assets and to provide and/or consent to the
release of her tax returns for the previous five years.

The defendant agrees the forfeiture provisions of this Plea
Agreement are intended to, and will, survive her, notwithstanding the
abatement of any underlying criminal conviction after the execution of
this agreement. The forfeitability of any particular property pursuant to

this agreement shall be determined as if defendant had survived, and that determination shall be binding upon defendant's heirs, successors, and assigns, until the agreed forfeiture, including any agreed money judgment amount, is collected in full.

### G.    Special Assessment

The defendant understands that she will be required to pay a special assessment of $100, due immediately upon sentencing.

## 10.   Appeal Waiver

The defendant waives any right she may have to appeal her conviction on any grounds. If the defendant's sentence of imprisonment does not exceed 87 months, the defendant also waives any right she may have to appeal her sentence on any grounds.

## 11.   Collateral Review Waiver

The defendant retains the right to raise claims alleging ineffective assistance of counsel, as long as the defendant properly raises those claims by collateral review under 28 U.S.C. § 2255. The defendant also retains the right to pursue any relief permitted under 18 U.S.C. § 3582(c), as long as the defendant properly files a motion under that section. The defendant, however, waives any other right she may have

to challenge her conviction or sentence by collateral review, including, but not limited to, any right she may have to challenge her conviction or sentence on any grounds under 28 U.S.C. § 2255, 28 U.S.C. § 2241, or Federal Rule of Civil Procedure 59 or 60.

## 12.   Consequences of Withdrawal of Guilty Plea or Vacation of Judgment

If the defendant is allowed to withdraw her guilty plea, or if the defendant's conviction or sentence under this agreement is vacated, the government may reinstate any charges against the defendant that were dismissed as part of this agreement and may file additional charges against the defendant relating, directly or indirectly, to any of the conduct underlying the defendant's guilty plea or any relevant conduct. If the government reinstates any charges or files any additional charges as permitted by this paragraph, the defendant waives her right to challenge those charges on the ground that they were not filed in a timely manner, including any claim that they were filed after the limitations period expired.

## 13.   Use of Withdrawn Guilty Plea

The defendant agrees that if she is permitted to withdraw her guilty plea for any reason, she waives all of her rights under Federal

Rule of Evidence 410, and the government may use her guilty plea, any statement that the defendant made at her guilty plea hearing, and the factual basis set forth in this agreement, against the defendant in any proceeding.

## 14.   Parties to Plea Agreement

This agreement does not bind any government agency except the United States Attorney's Office for the Eastern District of Michigan.

## 15.   Scope of Plea Agreement

This plea agreement is the complete agreement between the parties and supersedes any other promises, representations, understandings, or agreements between the parties concerning the subject matter of this agreement that were made at any time before the guilty plea is entered in court. Thus, no oral or written promises made by the government to the defendant or to the attorney for the defendant at any time before the defendant pleads guilty are binding except to the extent they have been explicitly incorporated into this plea agreement. If the parties have entered, or subsequently enter, into a written proffer or cooperation agreement, though, this plea agreement does not supersede or abrogate the terms of that agreement. This plea

agreement also does not prevent any civil or administrative actions against the defendant, or any forfeiture claim against any property, by the United States or any other party.

## 16.    Acceptance of Agreement by Defendant

The government may withdraw from this agreement at any time before the defendant pleads guilty.

Matthew Schneider
United States Attorney

Regina R. McCullough
Chief, Health Care Fraud Unit
Assistant United States
Attorney

Brandy R. McMillion
Assistant United States
Attorney

Mitra Jafary-Hariri
Assistant United States
Attorney

Dated: 8/3/2020

By signing below, the defendant and her attorney agree that the
defendant has read or been read this entire document, has discussed it
with her attorney, and has had a full and complete opportunity to
confer with her attorney. The defendant further agrees that she
understands this entire document, agrees to its terms, has had all of her
questions answered by her attorney, and is satisfied with her attorney's
advice and representation.

Sandford Shulman
Attorney for Defendant

Jean Pinkard, NP
Defendant

Stephanie Lambert
Attorney for Defendant

Dated: September 4, 2020

Page **24** of **24**