United States of America,

   Plaintiff,        Case No. 20-cr-20233
  vs.           Hon. Denis Page Hood

D-6 Jean Pinkard, N.P.

   Defendant.
_____/

## MS. JEAN PINKARD'S MOTION TO EXTENDED REPORT DATE BY **48 HOURS**

### INTRODUCTION

  This Honorable Court denied Ms. Pinkard's Motion to Extend Report date on March 3, 2025. Ms. Pinkard respectfully requests 48 hours extension to travel to Texas. The government does not consent to a 48 hour extension as it believes it will contradict the March 3, 2025 Court Order.

  Ms. Jean Pinkard is going to be 68 years old next month and suffers from stage 4 terminal cancer in her breast, lung, and bones. She lives in Florida and is unable to travel to Texas where she is required to report on March 3, 2025. Her report date has been previously extended due to her medical condition. Ms. Pinkard was hospitalized in December 2024 due to illness and missed doses of her palliative treatment. Ms. Pinkard has submitted a Petition for Commutation of Sentence to the Office of the President and is awaiting a decision. She provides her most current medical note for this Honorable Courts review. [Exhibit 1]. The Department of Justice does not concur in this requested relief due to Ms. Pinkard's inability to get a letter stating medical status rather than physician chart/notes. The legal

department has informed Ms. Pinkard that they do not provide letters and the medical chart shall be used in its place.

## BACKGROUND AND PROCEDURAL HISTORY

On May 8, 2024, Judge Friedman sentenced Ms. Pinkard to a term of one year and one day noting his recommendation that she be placed by the Bureau of Prisons "1. Placement at a medical facility to *treat* medical condition (cancer) and 2. Placement at a facility near Florida." R. 810, PgID 5845. Ms. Pinkard has lived in Florida for several years and is currently receiving palliative care at the Orlando Health Breast Cancer Institute for stage IV cancer which is diagnosed as terminal.

At the time of sentencing, Ms. Pinkard informed the court, through counsel, that she had cancer, and Judge Friedman reviewed her sentencing memorandum and granted her request for a downward departure. Ms. Pinkard was the first in the large indictment to proffer and she had worked at the Rankin medical office for a short period of time and lived a law-abiding life as a nurse working at hospitals to help people in her capacity as a nurse. Ms. Pinkard never sought an illegal lifestyle and offered to testify against all co-defendants just weeks after she was indicted. During her short period of time at the Rankin medical office (approx.. 6 months), Ms. Pinkard lost two immediate family members to COVID-19, and she would have applied for new work and left the Rankin office if it weren't for the pandemic and mourning the death of loved ones. Ms. Pinkard proffered immediately and was the impetus of many co-defendant plea agreements.

Ms. Pinkard's cancer diagnosis was relatively recent at the time of sentencing. She was diagnosed in late January 2024 with cancer and had recently been referred to oncology. Medical notes reflect that as of February 28, 2024, the prognosis was bleak, and the only goal was to "control symptoms and not attempt to cure her disease."

Judge Friedman was clear that Ms. Pinkard was to receive *treatment* in prison for cancer and Judge Friedman was under the impression that Ms. Pinkard could improve with the help of the Bureau of Prisons medical staff. Judge Friedman considered when sentencing Ms. Pinkard, that she had family support in Florida and that she was living in Florida as of 2023. It is clear from the granted downward departure, the recommendation to be housed in her home state of Florida around family, the Court recommendation that she does not report outside of Florida, and that she receives treatment while housed, supports that Judge Friedman never intended to give Ms. Pinkard a death sentence or for her to die in prison.

Ms. Pinkard's condition has deteriorated since May 8, 2024, and her most recent medical documentation indicate that she is "terminal" and merely receiving palliative care as her aggressive Stage IV breast, bone, and lung cancer are inoperable or treatable with a cure. To put it simply, Ms. Pinkard is dying.

The Bureau of Prisons did not follow Judge Friedman's recommendations set forth in the Judgment fashioned by Judge Friedman, R. 810, PgID 5845. The Bureaus of Prisons was to place Ms. Pinkard in Florida where she lives, and has support of her family, and would not have to undergo extravagant travel to report to the Bureau

of Prisons. On June 20, 2024 the Bureau of Prison's sent a letter directing Ms. Pinkard to surrender on July 9, 2024 at FMC Carswell Naval Air Station J St. Bldg 3000 in Fort Worth, TX. Ms. Pinkard was advised by the Bureau of Prisons that she would need to provide her own transportation to the Carswell prison.

Ms. Pinkard is in no condition to drive from Florida to Texas, which is an approximate 16.5 hour drive. Ms. Pinkard spends most of her days in bed or on the couch resting (fatigue is noted in her recent medical records) and she is unable to be transported by car or plane to the FMC Carswell prison due to risk of infection, fatigue, and recent TIA attack resulting in Ms. Pinkard receiving medical advice to avoid "risk factors."

Following sentencing, Ms. Pinkard has had several medical conditions requiring medical care and hospitalization. Specifically, Ms. Pinkard has been ill, and suffered a TIA or ministroke. The terminal cancer is taking its toll on her. Earlier this summer she had a virus or infection that she fought for weeks initially delaying her report date, and the ministroke followed. In addition to these to serious events, her medical notes reflect she is monitored for a cardiac condition. She was recently hospitalized in December 2024 for illness and missed palliative doses of treatment as a result.

<u>CURRENT MEDICAL STATUS</u>

The most recent medical documentation from Ms. Pinkard's oncologist indicates that her cancer is *not* treatable and is in fact terminal. Ms. Pinkard is merely receiving palliative care to ease pain and symptoms, but she is in the process

of dying. Ms. Pinkard is respectfully requesting this Honorable Court to delay Ms. Pinkard's report date until January 15, 2025.

On September 3, 2024, Dr. Nikita Shah advised in her medical letter that "Jean Pinkard is currently under my care at Orlando Health Breast Cancer Institute and is undergoing aggressive treatment for her metastatic (stage IV) breast cancer which is *terminal*. Her breast cancer has metastasized to her bone and lungs."

According to the National Cancer Institute, the term "terminal" means cancer that cannot be cured or controlled with treatment and leads to death. A person with terminal cancer may receive treatment to help control pain and other symptoms so they can be as comfortable as possible and have a better quality of life. Also called end-stage cancer.

Ms. Pinkard's oncologist stated in an August 27, 2024 medical note summary that Ms. Pinkard is scheduled on September 30, 2024 for a "PET/CT Skull Base to Mid Thigh" and "injection" on September 30, 2024 at the Orlando Health Cancer Institute Chemotherapy 83 W Miller St. Orlando, FL. Additionally, the medical note summary instructs Ms. Pinkard to have "labs" conducted on October 31, 2024 review labs, and scans with Dr. Nikita Shah at the Orlando Health Cancer Institute Chemotherapy. Further information is provided in the August 27, 2024 medical note that Ms. Pinkard currently has "malignant neoplasm metastatic to lung, unspecified laterally and Malignant neoplasm metastatic to bone. "The August 27, 2024 After Visit Summary instructs Ms. Pinkard to continue "Kisqali" 600 mg/day, and "letrozole" 2.5 mg per day.

Further prognosis information is provided by Ms. Pinkard's oncologist in her August 27, 2024 Progress Notes. The notes indicate in Ms. Pinkard's profile that she is on palliative letrozole and palliative Kisqali for ER positive PR positive Her2neu neg (+1) stage IV (cTaN1M1) left breast cancer.

According to the National Cancer Institute palliative therapy is "treatment given to help relieve the symptoms and reduce the suffering caused by cancer or other life-threatening diseases. Palliative therapy may help a person feel more comfortable, but it does not treat or cure the disease. For example, surgery, radiation therapy, or chemotherapy may be given to remove, shrink, or slow the growth of a tumor that is causing pain. Palliative therapy may be given with other treatments from the time of diagnosis until the end of life." [Attached hereto as Exhibit 10]. In other words, Ms. Pinkard is dying and there is no cure for her stage IV cancer. She is merely being treated for pain and to provide her with the best quality of life until death.

Ms. Pinkard is participating in an intense palliative plan according to the August 27, 2024 Progress Notes the "Plan" set forth by oncologist Shah, states "**7. Started Kisqali C1D1 600 mg on a 3 week on / 1 week off schedule on 3/11/24. Tolerated 5 cycles well**." The plan further states "8. C6D1 started on 8/8/24. Last dose planned on 8/28/24." Going forward paragraph 10 directs that Ms. Pinkard begins the "**plan to start the new C7D1 on 9/5/24 and do a follow up scan in October**" and has "labs pending" from the August 27, 2024 visit. Additionally, it is noted "11. **She initiated letrozole February 2024**, **tolerating it well, will continue to take it daily**" and "12. Given bony lesions on scan, **Xgeva for**

**prevention of SRE** start 4/8/24, **will continue to get every 8 weeks**." R. 828, PgID 1-10.  This treatment plan is continuing and is noted in Exhibit 1.

Ms. Pinkard has scans, tests, injections and labs scheduled through the spring of 2025, and is requesting a delayed report date of May 1, 2025 to allow for her Petition for Commutation of Sentence to be reviewed and to continue her palliative treatment and tests. The medial notes state that her palliative medications have had a positive effect for Ms. Pinkard's symptoms even though there is no treatment or cure for her cancer that is advanced to stage IV, terminal, end of life status.

This report date will also allow the Bureau of Prisons to contemplate how and where it should house Ms. Pinkard in light of her, stage IV breast cancer, bone cancer, lung cancer, cardiac condition, and reoccurring TIAs or mini strokes, all while at high risk of infection, and being required to avoid "risk factors" associated with TIAs. Judge Friedman was clear that she should be "treated" in prison, which is no longer possible with her current diagnosis, and that she be placed in Florida around family. Judge Friedman's downward departure gives insight that he believed Ms. Pinkard's role warranted reward with her sentence, but practically that has not been put in place. The Bureau of Prison's has assigned Ms. Pinkard to the State of Texas where she will be isolated from her family in Florida during her last days alive, and likely die in her cell.

The FMC Carswell has a bad history with handling viruses or infection, and this Honorable Court should look to how it handled COVID-19 to gain insight and understand that Ms. Pinkard is not able to be housed there in her current condition.

In July of 2020, more than 500 women tested positive for COVID-19. Roughly half of the population according to CBS News. Women interviewed noted that cells were not immediately cleaned after a person tested positive, stating they felt abandoned in 6 x6 cells with three other people" CBS also reported on the American Medical Association's finding that inmates are 3 times more likely to die and 5.5 times more likely to become infected by the virus. According to BOP.gov, FMC Carswell houses a total of 1,165 inmates according to the BOP website. Covid is not the only concern that Ms. Pinkard has being housed at FMC Carswell. This covid data proves that any illness that is contagious will run rampant throughout the facility, and Ms. Pinkard is not strong enough to sustain encountering a virus. She was sick most of the summer, and almost immediately following the virus she had a TIA. Ms. Pinkard is too weak to sit long periods of time and feels pain after sitting up to watch television.

Moreover, Ms. Pinkard qualifies for "Care Level 4" classification according to the Care Level Classification for Medical and Mental Health Conditions or Disabilities, Federal Bureau of Prisons Clinical Guidance, May 2019. Care Level 4 is the most serious category of care that an inmate can qualify for and lists "cancer on active treatment" and "stroke" as factors to qualify for Care Level 4. This is significant for this Court to consider because this Care Level 4 is the most frequently discharged inmate under the Compassionate Release/First Step Act. Ms. Pinkard has not set foot in prison yet, and according to the Bureau of Prisons, she would be one of the highest maintenance inmates to medically care for in the facility. Given these criteria of Level

4 set forth by the BOP, it seems clear that Ms. Pinkard is not fit to travel to Texas to report to the Bureau of Prisons in her condition.

REQUESTED RELIEF

WHEREFORE, Ms. Jean Pinkard respectfully requests that this Honorable Court delay her report date for an additional 48 hours to March 5, 2025 to allow her to travel to Texas.

Respectfully submitted,

/s/Stefanie Lambert
STEFANIE LAMBERT JUNTTILA
Attorney for Defendant
        JEAN PINKARD
400 Renaissance Drive 26th Fl.
Detroit, MI 48243
(313) 410-6872
attorneylambert@protonmail.com
StefanieLambert.com

Date: March 3, 2025

CERTIFICATE OF SERVICE

I hereby certify that on March 3, 2025, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will send notification of such filing to the United States Department of Justice and Assistant United States Attorney Regina McCullough.

/s/STEFANIE LAMBERT
Stefanie Lambert Junttila
JEAN PINKARD
400 Renaissance Center
26th Floor
Detroit, MI 48243
(313) 410-6872
attorneylambert@protonmail.com
StefanieLambert.com

Date: March 3, 2025